Good morning, Your Honors. Thomas Freeberg and Sarah Bunge on behalf of Appellant Aaron Schoenfeld, we would like to request three minutes for a reply, a rebuttal. Your Honors, Schoenfeld's Federal Tort Claims Act should not have been barred. Judge Hayes ordered dismissing this case in December 2004. We believe it was not supported by the facts in the law. A year and a half before that time, Judge Keepe reviewed the same facts, the same law, and in August 2003 found that this case was not fair as barred. In the intervening year and a half of discovery, no real additional facts were revealed. We confirmed the maintenance of Fort Mesa Road was exclusively a civilian function, didn't involve factors of military discipline or decision-making. We confirmed the fact that Schoenfeld was on liberty and was in town as a passenger in a vehicle in civilian clothes. He was under compulsion of military orders, wasn't performing a military function. Mr. Freeberg, how do you distinguish the Coffey case? Are you familiar with that one? I do. Coffey is a 1971 decision by District Court dealing with Camp Pendleton, but in the Dreyer case and the Johnson v. United States case, this Court has said that the location of the accident is not singularly determinative. In Coffey, it appeared to be singularly determinative. It's the nature of the activity to determine whether it's incident to service. There's been a number of cases. But in Coffey, was not the serviceman on his way to off-post liberty? He was. He was. That's similar than this case, is it not? That is a similar factor. However, since Coffey, this Court has said not necessarily being on base is singularly determinative. Whereas, for example, in the Dreyer case, I think the Dreyer case is probably the most analogous to this particular case. That particular individual was on liberty. He was a solo point military base, a base which you need to get a pass to get onto. He was killed on the base. The fact that he was on the base was not held to be singularly determinative. Aren't there two other facts that distinguish Coffey? I'm sorry? Aren't there two other facts that distinguish Coffey from your case? I think the issue on Coffey is, unfortunately, again, it's an earlier case. It's a roadway case. Counsel, I'm trying to help you out here. In Coffey, because I plan on asking the same question of government counsel. In Coffey, it was a government-maintained road, and it was a private road. I think that's absolutely correct. Thank you. Well, I know. But what I'm saying to you, does that make a difference? I think it does. And the reason is, is that, you know, in this, in looking at the nature of the activity, you have to look at the military decision-making comes into play. If it's a military-maintained road, I would submit that it's more arguable that military decision-making may have to come into play. In here, in this particular case, it was decidedly a civilian function. And I don't think that's a disputed fact, both by Judge Keep as well as Judge Hayes. And the evidence is it's a civilian-maintained road. You know, it's interesting. A case which is from the Fifth Circuit, which I think kind of sums it up very nicely, is the Parker v. United States case. It says, you know, it's really illogical to have a rule under Ferris that says if you're on the base, off duty, on liberty, leaving the base, and you get injured, it's illogical to prove a bright line in the sand the same as if you're off the base and coming back onto the base, where one, you should be Ferris-barred, one, you should not be Ferris-barred. The decisions say you've got to look at the activity. And there's a slew of cases talking about the activity. And when you're looking at activities such as Mr. Schoenfeld's, so you look at, is it recreational? Well, arguably, if it's recreational, he's under, on liberty at the time, he's leaving base. Is the nature of his activity, is the reason he is on base solely a benefit because he's in the military? The answer is no. Anyone is able to be onto camp panels and easily acquired base. That was distinguished as this case from the Bong case, the Costco case, and those other cases, as well as the Latchip case. All those cases basically said that that was a benefit solely available to the individual because they were in the military. The second thing to look at, or the second aspect is, was the individual under direct supervision for the activity that he was performing? And I think that's very important. Because here we have Aaron Schoenfeld, passenger in a vehicle, on liberty, going to town. The evidence is to hang out, maybe get a bite to eat. Somehow it got thrown into the mix that he may have had his uniforms with him, may have dropped them off at the cleaners, and that seemed to be Judge Hayes' call to action, to say this is a Ferris Bar case. We pointed out, there's such a tenuous argument. There's no reason to say that all Marines are under some duty, to maintain a clean uniform, to stay fit. Mr. Schoenfeld, Lieutenant Corporal Schoenfeld, was not under direct military compulsion at that time, direct military order, to take his uniform to the cleaners to get done. He could just as easily decide not to do it, do it on base later. I've submitted in the brief, and we've argued that that is too tenuous of a distinction. You know, it's similar if you look at some of the... Let me ask you about something I find troubling that may be a distinction, and that is, hasn't Lieutenant Schoenfeld received substantial benefits from the military in his disability benefits and his free medical care, according to the Red Brief, in the hundreds of thousands of dollars? Well, there's some dispute as to what benefits he has and hasn't gotten the record, and a lot were compromised. But that in and of itself is not a turning factor, because as this Court has said in Tabor v. Maine, as well as the Brooks and Brown cases, the receipt of military benefits in and of itself doesn't preclude the ability to attach Ferris, or at least the ability to have a Federal Tort Claims Act. The government's going to get a set-off for what they paid. Is that right? Didn't they abandon their request for a set-off? Would that necessarily happen? No. What had happened in this case, there were other joint tort feasors, and there was a prior tort feasor. We brought the claim in of Lieutenant... of Mr. Jacobson, who actually two months earlier had hit the guardrail. He was insured by a private insurer, and they offered their policy limits. The government abandoned their right to claim a set-off as to that amount, and in addition, there was a $30,000 settlement with Kwame. But that doesn't necessarily mean the government's abandoned their right to claim a set-off in terms of VA benefits or money that's been paid for medical treatment. But as these courts have said, as this court has said, as well as the Supreme Court, it is not incongruous to allow an individual to receive military benefits in addition to have a Federal Tort Claims Act, and it won't be a double recovery. So that in and of itself is not the distinguishing factor. Again, you have to look at the nature of activity, and if the nature of activity is decidedly non-military, as in this case, it is not appropriate that it should be Ferris barred. A case which I think also bears some discussion is the Greene case. And in Greene, if the Court will recall, this is an individual that was on duty, left with permission to go off base, to go back to his home, to get some training materials which he needed later on for his military function. He also decided to get some donuts. He got involved in an accident. This Court, understanding the fact that Mr. Greene was actually ancillary to his military purpose, also had a personal mission, for example, getting the donuts, said the fact that he's necessarily getting the training materials, which he would then later need, didn't necessarily mean for that activity at that time he was under compulsion military orders. And I think those are distinguishing factors we need to look at. If, in fact, the primary purpose of Mr. Schoenfeld's trip was decidedly non-military, and he may have had an ancillary military purpose, that in and of itself should not allow the Ferris Doctrine to completely encompass every activity as an individual does, leaves under no strict compulsion for military orders for that particular activity. If there's no further questions, I'd like to reserve the remaining time for rebuttal.  LOWELL STERGEL, U.S. DISTRICT COURT Good morning. May it please the Court, I'm Lowell Stergel from the Department of Justice, representing the United States. Tom Reeve from the U.S. District Attorney's Office is with me this morning. The District Court correctly found that this case is barred by the Ferris Doctrine because Schoenfeld was on active duty at the time he was injured. He was on a military base, and he was on the base because of his active duty service. He lived in the barracks on the base to which he'd been assigned. To get off the base, he had to drive along this road, which is, he testified in his deposition, the only way to get from his barracks off the base. So he was there because of his – I'm saying, in effect, that the only – that location, location, location is the dispositive factor. Not at all. Or as you said, it isn't. First of all, he has to be on active duty service, and not on – Well, yeah, but I mean, essentially, anybody's going to be. I mean, if they're living on the base, they're going to be on active duty, presumably. I don't know, but I'm guessing. There are lots of military people who – Well, the servicemembers whose claims were barred by Farris in both Coffey and Millang, that's the Picnick case on base, were both on liberty also. And so was the servicemember in Costo, who died in the rafting trip. So the courts have held that if a person's on liberty, Farris applies. Now, if he's on leave, it could be different, because in the Farris case, the court distinguished the prior case and the Supreme Court Brooks. As long as the accident occurs on the base? Or what if it occurred two feet off? Well, that's – this Court has made clear that, again, in Troglia and Green and Mills v. Tucker, if the accident is off the base, and the only negligence that is alleged is basically a car crash caused by a military person, Farris doesn't apply. In each of those cases, significantly, the Court said it would be – there would be a different result if the accident happened on a base. So, again, I think here we have more than just location. We have three things. Active duty, not on leave. The second thing we have – and let me talk about the Dreyer case, because that case is very different for two reasons – actually, for three reasons. First of all, the accident in that case was not on a base. It was on a military recreation area called Solo Point Boat Launch. It was not fenced in the way this perimeter is. This is an active combat duty military base. But the public had access to that road. They could use that road. It wasn't a private road. Well, the public could get in, but only if they entered through one of the seven gates, only if their car was subject to inspection. They had to stay right on the road. And in Dreyer, it was different, because the Court made a point of holding that the public could come onto that area, which was not a base, it was not fenced in, without even going through a checkpoint or a pass or seeing a guard or anything. It was a completely open area. And to say that that controls an accident on a military base, especially this one, the record shows that this is a base that's devoted to artillery firing ranges, landing beaches, aircraft bombing and strafing ranges, large maneuver areas. This is not the kind of area where the military lets people, civilians, come on the base willy-nilly. If they come on at all, it knows where they are. And it has regulations that strictly limit their ability to go anywhere on the base. Okay. I want to address the issue brought up in Scherer, which the Supreme Court focused on the fact that the, and I'm quoting here, that the key inquiry is whether the suit requires the civilian court to second-guess military decisions and whether the suit might impair essential military discipline. Take the facts of this case. In what way does this case implicate either one of those issues? If you look at the Wolfe deposition, what came out from that, which, by the way, Wolfe was not, had not been deposed at the time of the first record. Wolfe testified that what happened in this case is the Provost Marshal, who's obviously a military official, he has the command responsibility for taking care of road maintenance on the base. And what happened is the Provost Marshal, for whatever reason, did not send an order down to the civilian public works office to fix the guardrail or to put up any kind of a warning sign or anything. So what the plaintiffs essentially are alleging here is military negligence, negligence lying at the feet of a commander on a base. So there's your military decision-making, which falls within the Scherer decision. But I should say also that Scherer was not the Supreme Court. His Supreme Court was United States v. Johnson. And in Johnson, the Supreme Court specifically chided the Eleventh Circuit for having engaged in that kind of analysis, looking to the rationales of the Ferris Doctrine, as opposed to applying the incident-to-service test, and said that's not the way to apply the doctrine. So I think the Court should not really go to the Supreme Court. But Judge Hayes didn't rely on that as weighing in favor of application of Ferris. He found that the concept of military discipline didn't weigh one way or the other. So he didn't use that as a basis for his decision. Well, you don't need to. So, I mean, you say that's the new fact. But he didn't use it as the basis for his decision. So my question is, why wasn't Judge Hayes found under law the case principles to follow Judge Keefe's decision? Well, the first answer, which the district court gave, the second district judge whose name I've forgotten, is that the Ferris Doctrine Judge Hayes was the second one. Jurisdictional doctrine. So the law case does not bar a second judge from taking a second look at it and making a different ruling on jurisdiction. But the Wolf's deposition was not the only new evidence. The other evidence was Schoenfeld's own deposition. And he's the one who testified about the nature of this road and the fact that going on that road was the only way he could get off the base. And he's the one who testified that he was assigned to quarters on the base. And that's why he was there to because the military assigned him to the barracks on the base. None of this evidence was before the first judge who saw this case. So in sum, again, I think you should apply the incident to service test with the three factors the way the court has always done it. And each time this court has looked at a case like this, it's applied the Ferris Doctrine. The very latest one was the Latcham case. That was the case where there was a service member who was killed on a military recreational facility in Hawaii. And in that case, the court applied the Ferris Doctrine, noting that he was on active duty service even though he was on liberty. It was on a military location. He was enjoying a government benefit because that was government-provided housing on the beach for recreational purposes, as I recall. That was Corporal Schoenfeld. He was entitled to live at the barracks because of his military service. He lived there for free. Oh, sure. No question about that. But, I mean, he was not engaged in a government-sponsored recreational activity at the time of the injury. I mean, that's a difference. Well, I think that may make that case an easier Ferris case than this one for that reason. But this case, that case didn't involve a military base. That was an area that was a recreation area. This case is stronger than that one because you've got... You come down basically and just say the law is that if you're on active duty, on liberty but you're on active duty, and the accident occurs on the military base, that's it. And your presence on the base has flowed from your military active duty status. There could be a scenario in which somebody's on a base, but the reason he's on the base has nothing to do whatsoever with the fact that he's on active duty status. So the fact that he's on a road that is used by the public as well, the accident, and that he's not using that road pursuant to military orders, and that he's on his way to play, doesn't count for anything. That's what this Court has held. That's what all the circuits have held. There's not a single case holding to the contrary. In the Parker case, the Fifth or Eleventh Circuit case that he mentions, the Court held that that was a case in which the service member's presence on the base didn't arise out of his military service. But the Court said the case would be different if he was there because of events arising out of life on the military reservation. But if your proposed rules, the rule, it should make our life easier when it's just very black and white, and we wouldn't have to bother with all these four-part tests and looking at whether military discipline is involved. We could just say, okay, I'm the base, and it's over, active duty relation. No, not at all. I mean, I think what Judge Reimer says, you have to apply the three-part test. What's the duty status? If he's on active duty and not on leave, that points toward Ferris. Then you look to the location. If he's on a base, as opposed to just a military recreation area or off the base, that points toward Ferris. And then, well, why is he on the base? If he's on there because he lives there, then that points toward Ferris. Now, I think you should... I'm not understanding. So wasn't he on weekend leave? Yes. He said he was not on leave. Oh, no, I'm sorry. He was not on leave. He was on liberty. There's a distinction between liberty and leave. Leave is like vacation for you and me. It's scheduled. It can only be canceled formally by issuing orders. If you're on liberty, your liberty can be canceled on the spot. So let's say if you're a soldier, and you're on base, and you're on liberty, and you're going off... So and so, he's going off the base. I want to go off... If somebody needs him, they can just stop him right there and say, oh, sorry, you can't leave the base. We need somebody to do guard duty at Guard Station X. Your liberty's over. His liberty is over. So he's in a substantially different status than a person who's on leave. And the Supreme Court made this distinction itself in the Ferris case, where it said one of the reasons why the plaintiff in Brooks could bring his suit was because he was on leave. And the reason why the plaintiffs in Ferris couldn't is they weren't on leave. They were just on a liberty status. So that, I think, comes right out of the Ferris case itself. And the other major distinction with Dreyer is the benefits, which you mentioned. The Dreyer court was very concerned that the plaintiff there was getting no benefits. That's because he was found to have acted out of the line of duty. It was his own misconduct that caused his injury. Hence, he got nothing from the government except, well, he died. So he got absolutely nothing. Here, Schoenfeld is being taken care of by the military. Well, I wouldn't go so broad as to say that in light of what's going on with our military hospitals. So there may be a reason, just a choice, not to go to the veterans' hospitals. Well, you say the Supreme Court in the Johnson case said that one of the rationales for Ferris is that it's essentially like a workers' comp scheme. When you join the military, you give up your right to bring an FDCA suit, just like I give up my right to sue the government if I slip on the job. I have FICA benefits. If you could join the military, you give up your right to sue, and you get what the Supreme Court described as substantial no-fault benefits. You don't have to prove fault. No-fault benefits. And that's sort of like a workman's case, which you agree to when you get into the military. And that was the Supreme Court's last word on it. So again, very different from the Dreyer case, where the family was left with absolutely nothing. In closing, Your Honor, I'm far over my time, but we would ask you to affirm the District Court. Thank you. Thank you, Your Honors. Let me just say, in Scherer, you know, that dealt with a military personnel decision. You know, that goes to the heart of the military system. We're not here talking about second-guessing Mr. Wolfe's civilian decision to put some cones out there to tell people there's a problem. I mean, this is a wholly different situation. How do you respond to his suggestion that this is a, when you join the military, it's a tradeoff. It's like workers' comp. I would answer, the record in this case is very clear that Mr. Schoenfeld was denied a number of benefits. For example, the government didn't pay for his prosthesis, didn't pay for needed surgeries. There's evidence there. Mr. Schoenfeld didn't join the military for the understanding he'd get hurt in service, lose his leg, and not get all his medical benefits paid for. For the government to come to this Court and suggest that he's been well taken care of for losing his leg and all his benefits have been taken care of is not supported by the record at all. I'm shocked to hear that quite candidly, because the record is clear, the fact that the military hasn't provided Mr. Schoenfeld with the necessary benefits. But would that not be true in a workers' comp situation as well? Someone may argue that they didn't get an appropriate relief under workers' comp. They didn't have the right to sue. They could have done much better in a court. Is that comparable? No, it's not, because the U.S. Supreme Court and Congress have already indicated that a service member can bring a Federal Tort Claims Act which is not being ferrous barred and also receive military benefits. The answer is you get a trade-off. You get a set-off. That's the answer. You don't get complete barred. The test for being injured while on duty is different than the test for incident to service. The service-connected disability is not the standard. Incident to service is the standard. And I submit it's different. Counsel also mentioned the fact about Solopoint and Dreyer. I reread Dreyer this morning. Dreyer is a military reservation who needed a pass. I didn't see in Dreyer where they talked about whether he had to go through a gate or not. But I think for purposes is the Dreyer case is on all fours, the reason being it's a military reservation. As just keep noted in the 2003 order and as this Court has noted a number of times in the Ferris cases, for the activity Mr. Schoenfeld was engaged in, he was not under the compulsion of military orders. He could have been injured just as any other civilian on that road. And that's what takes this case away from the Latcham case. It takes away from the Milling, Costco, and Bond case. Because in those activities, the sole reason why the individual was there was because it was only available to members of the militaries and their dependents. Here, Stort Mesa Road is the main road at Camp Pendleton. Any civilian could get on there with a pass. And this is not the same type of situation we're talking about where this particular area is solely and exclusively reserved for military. And under the Roush case, and I think really kind of sums it up, you've got to look to the fact is, is his presence there solely because he's in the military? In other words, can civilians use the area as well? And we know in those other cases they can't. And is he under the subject of direct military control and orders in performing that particular mission, not some ancillary purpose of perhaps dropping off his dry cleaning? We respectfully request the court remand the case back to the district court to proceed the trial. Thank you. All right. Thank you, counsel, both of you, for your argument. And that I just heard would be submitted. Thank you, your honors. And next year argument in the first NACAP case that's on the calendar.
judges: Rymer, Wardlaw, Smith